08  CV  4421

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                                         :
KATHERINE FELICIANO                                      :     Civil Action No.
                                                         :
                                   Plaintiff,            :
                                                         :     COMPLAINT
              v.                                         :
                                                         :
                                                         :
STUDLEY, INC., ROBERT GRAUBARD, and                      :
LORRAINE VEGA, in their individual and                   :
official capacities.                                     :     JURY TRIAL DEMAND
                                                         :
                                   Defendants            :
                                                         :
-----------------------------------------------------------X

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Katherine Feliciano, by and through her undersigned attorneys, as and

for his Complaint in this action, hereby alleges as follows:

### NATURE OF THE CLAIMS

1.   This action seeks declaratory, injunctive and equitable relief, as well as

monetary damages, to redress Defendants unlawful employment practices, including their

unlawful discrimination against and termination of Plaintiff, in violation of the

Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 et seq. ("ADA"), the

New York State Human Rights Law, New York Executive Law §§ 290 et seq., and the

New York City Human Rights Law, New York Administrative Code §§ 8-101 et seq.,

and other tortious conduct.  The Equal Employment Opportunity Commission ("EEOC")

has already found probable cause that the Defendants have violated the ADA.

2.   Because she suffered from disabilities, namely, a cancerous glioma brain

tumor (temporal astrocytoma), epilepsy, petit seizures, convulsive grand mal seizures,

1

stuttering, confusion, and slurred speech, Defendant Studley, Inc., by and through its

agents and employees, including Mr. Robert Graubard and Ms. Lorraine Vega, denied her

request for a reasonable accommodation, namely, a brief period of leave to receive

medical treatment to stabilize her grand mal seizures, and terminated her employment in

violation of the ADA, the New York State Human Rights Law, and the New York City

Human Rights Law. Plaintiff was terminated without warning or explanation, and in

spite of an unblemished employment history.


3.   Defendants' discriminatory and tortious conduct showed a knowing, reckless

and/or willful and malicious disregard for Plaintiff's rights. Defendants' unlawful

conduct has caused and continues to cause Plaintiff to suffer economic damages and

severe mental anguish and emotional distress, including anxiety and depression that

require regular psychiatric care, as well as temporary intensification of Plaintiff's

seizures.


## JURISDICTION AND VENUE

4.   The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

1343, as this action involves federal questions regarding the deprivation of Plaintiff's

rights under the ADA. The Court has supplemental jurisdiction over Plaintiff's related

claims arising under state and city law pursuant to 28 U.S.C. § 1367(a).


5.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a

substantial part of the events or omissions giving rise to this action, including the

unlawful employment practices alleged herein, occurred in this district.

6. Plaintiff has complied with all statutory prerequisites to her ADA claims, having filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about October 25, 2005. On or about February 13, 2008, the EEOC found that there was probable cause to believe that Defendants' had violated the ADA and issued a right to sue.

7. Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

8. Plaintiff Katherine Feliciano ("Plaintiff" or "Ms. Feliciano") is a 28 year old woman with disabilities, namely, a cancerous glioma brain tumor (temporal astrocytoma), epilepsy, petit mal seizures, convulsive grand mal seizures, stuttering, confusion, and slurred speech, who resides in the Bronx, New York. At all relevant times, Ms. Feliciano met the definitions of an "employee" and a "qualified individual with a disability" under all applicable statutes.

9. Defendant Studley, Inc. ("Studley") is a corporation with its headquarters located at 300 Park Avenue, 3rd Floor, New York, New York, 10022. Studley provides real estate advisory services to firms across all industries. At all relevant times, Studley has met the definition of an "employer" under all applicable statutes.

10. Defendant Lorraine Vega is the Director of Operations for the New York Branch of Studley. Between 2003 and 2005, Ms. Vega was Plaintiff's direct supervisor. At all relevant times, she participated directly in disability discrimination and retaliation against Plaintiff.

3

11. Defendant Robert Graubard is Executive Vice President and Branch Manager of Studley's New York office, having previously served as General Counsel to the New York office. At all relevant times, he participated directly in disability discrimination and retaliation against Plaintiff.

## FACTUAL ALLEGATIONS

12. Ms. Feliciano is a qualified individual with disabilities, namely, a cancerous glioma brain tumor (temporal astrocytoma), epilepsy, petit mal seizures, convulsive grand mal seizures, stuttering, confusion, and slurred speech, which substantially limit one or more of her major life activities. Plaintiff's disabilities substantially limit one or more of her major life activities including, but not limited to, walking, speaking, thinking, learning, concentrating, sleeping, and working.

13. Ms. Feliciano suffers from a brain tumor and epilepsy which cause her to suffer aggressive seizures. Plaintiff was diagnosed with the brain tumor (and, shortly thereafter, with epilepsy) in early childhood prior to her employment with Studley. Plaintiff's symptoms are mostly controlled by medication, however, during certain periods (tumor growth, for instance, or following cancer treatment), her seizure disorder can become unmanageable. During these periods, Plaintiff is prone to petit and grand mal seizures. The symptoms of these seizures range from momentary confusion and slurred speech to convulsive fits, momentary total loss of the ability to speak, loss of consciousness and severe disorientation.

14. Ms. Feliciano has strived for and attained independence as a young adult. Ms. Feliciano is currently a part-time college student at the City University of New York

where she is studying to become a paralegal. Ms. Feliciano has maintained work-study employment without incident and is in good academic standing. Ms. Feliciano lives with her brother and maintains financial independence.

15. Notwithstanding her disability, Ms. Feliciano was fully qualified to work at Studley. Plaintiff worked at Studley for over three years with minimal accommodation for her disabilities. Prior to her employment, Ms. Feliciano participated in a mentoring program at Studley while in high school in the late 1990's, later seeking part-time employment as an evening receptionist. While in the mentoring program and during her employment, she performed her tasks with skill and competence. She was never disciplined or counseled regarding her performance, and was often asked to take on additional responsibilities. As a part-time employee, she frequently covered shifts for other daytime employees and was frequently asked to assist with other more substantive projects outside of her duties as a receptionist.

16. At all relevant times, Studley was fully aware of Plaintiff's disabilities and their debilitating side effects. As a safety precaution, Ms. Feliciano informed her all of her supervisors of her disability and the possibility that she may suffer seizures at work. Specifically, Ms. Feliciano informed her former supervisor, Ms. Beatrice Bauza, and Ms. Bauza's replacement, Ms. Lorraine Vega, that her seizures were debilitating and potentially dangerous and that an ambulance would need to be contacted in the event of a grand mal seizure.

17. Moreover, Ms. Feliciano's disabilities are apparent during periods of seizure activity. Ms. Feliciano suffered both petit and grand mal seizures at work during her

5

employment with Studley and, on three occasions, an ambulance was called after Plaintiff

suffered from a grand mal seizure. On each occasion, Ms. Vega made the call for the

ambulance. Additionally, Ms. Feliciano participated in a mentoring program in the late

1990's with Studley through a social service agency which is responsible for helping

individuals with disabilities obtain employment. The social agency continued to provide

support to Ms. Feliciano during her program with Studley, and openly communicated

with Studley supervisors about Ms. Feliciano's disabilities, many of whom were still

working with Studley when she returned as a part-time employee.

18.   As previously mentioned, Ms. Feliciano participated in a mentoring program

as a teenager in 1996 with Studley and met many of the employees she later worked with,

including Ms. Bauza. She was placed in the program through the Children's Aid Society.

Later, in 2002, after she graduated from high school, Plaintiff contacted Ms. Bauza

inquiring about employment opportunities. Ms. Bauza informed Plaintiff that there was a

position available for a part-time evening receptionist.

19.  Plaintiff interviewed for the position and was hired. Plaintiff began her

employment in January 2002. Her salary was $15.00 per hour and her weekly income

was approximately $225.00 per week. Plaintiff worked at night from 4:30-7:30 PM five

days a week. She had infrequent overlap with other employees, including Ms. Vega and

Mr. Graubard, who appeared to take little interest in her job performance. Indeed, Ms.

Feliciano repeatedly requested such an evaluation from Ms. Vega and was assured that it

would be forthcoming. During her entire employment with Studley, Ms. Feliciano never

received a performance evaluation.

6

20.  Ms. Feliciano's position was thankless and undesirable.  Ms. Vega and other Studley employees frequently commented on how difficult it was to hire people for the evening receptionist position occupied by Ms. Feliciano.  It was a lonely and isolating job with little opportunity for contact with other employees.  Ms. Feliciano learned to cope with the position by agreeing to work shifts for daytime receptionists, and by agreeing to assist other employees with more substantive tasks.

21. Ms. Feliciano frequently worked 40 hour weeks and accrued overtime on occasion, all with the blessing and encouragement of her superiors.  Ms. Vega expressed gratitude to Ms. Feliciano for performing the work of others with enthusiasm.  Around the office, Ms. Feliciano developed a reputation as a team player willing to pitch in and help with other assignments when needed.

22. Around March of 2002, Plaintiff's seizures returned following a period of remission.  Ms. Feliciano informed Ms Bauza, who was already aware of Plaintiff's epilepsy from prior experience.  At this point, Plaintiff was suffering from petit mal seizures with mild symptoms such as momentary confusion and slurred speech.  Plaintiff was able to perform her essential job responsibilities without incident.

23.  In 2003, Ms. Bauza was replaced by Ms. Vega as Plaintiff's supervisor.  Around the same time, Ms. Feilciano's seizures grew more severe and frequent.  Aside from suffering from petit mal seizures at work, Ms. Vega began suffering grand mal seizures.  In the summer of 2003, Plaintiff suffered a grand mal seizure and went into convulsions at work.  Ms. Vega summoned an ambulance and Plaintiff was hospitalized.

7

Afraid of losing her job, Plaintiff missed a day of work and retuned to work the following day.

24. In late 2003, Plaintiff began trying different anti-seizure medications in an effort to gain control over her seizures. For a year, Plaintiff suffered regular seizures but none of major intensity. Plaintiff was able to perform the essential functions of her job and continued to receive infrequent but positive feedback from Studley employees.

25. In 2004, Plaintiff had two grand mal seizures at work and an ambulance was again summoned by Ms. Vega. Plaintiff returned to work on both occasions after a day absence. During this time, Plaintiff began suffering more serious side effects from the seizures, including loss of consciousness, stuttering, confusion, and halting-speech impediments. Still, Ms. Feliciano was able to perform the essential functions of her job, but it required more effort to do so, and Plaintiff was growing more concerned about the unpredictability and growing intensity of her seizures.

26. At the time, Plaintiff's doctors were urging Plaintiff to take a leave of absence from Studley for 2 or 3 months to undergo testing and make a full-time effort to control her seizures. Afraid to lose her job, Plaintiff refrained from requesting leave.

27. In November 2004, after being informed that her grand mal seizures were likely to intensify without aggressive efforts to control them, Ms. Feliciano met with Patti Ann DiResto in the Human Resources Department to discuss the possibility of taking paid leave. Ms. Feliciano informed Ms. DiResto of her medical problems and requested 2-3 months paid leave. Ms. Feliciano indicated that she wished to return upon completion of medical treatment and informed Ms. DiResto that she believed her seizures

would be under control upon her return. Ms. DiResto stated that she would check to see
if Plaintiff was eligible for paid leave. After a day, Ms. DiResto contacted Plaintiff and
informed her that she was not eligible for paid leave. Ms. DiResto did not present
Plaintiff with the option of unpaid leave. Afraid to ask for unpaid leave, Ms. Feliciano
accepted Ms. DiResto's response and indicated that she did not intend on taking leave.

28. In January 2005, Plaintiff suffered a severe grand mal seizure while shopping
at a mall in Westchester County. The seizure resulted in temporary paralysis,
convulsions, and total loss of consciousness. An ambulance was contacted and Plaintiff
was hospitalized overnight. Ms. Feliciano was terrified by the severity of this seizure and
decided that she needed to seek medical treatment to gain control of her seizures.

29. While she was in the hospital, Ms. Feliciano called Ms. Vega and informed
her that she would return to work following another day of recuperation in the Hospital.

30. Ms. Feliciano was released from the hospital two days after her seizure and
went directly to work. Ms. Feliciano found Ms. Vega and inquired about unpaid medical
leave of absence. Ms. Feliciano explained that her seizures had become uncontrollable
and that they were likely to affect her employment (and her long term health) unless she
was able to control them immediately. Ms. Feliciano informed Ms. Vega that she would
only need 2 or 3 months leave and that her seizures would be under control upon her
return.

31. Ms. Vega responded, immediately and without the benefit of consultation,
that Ms. Feliciano was not entitled to unpaid leave of absence since she was a part-time
employee. Ms. Vega also informed Ms. Feliciano that she could not guarantee that her

9

position would still be available upon her return from unpaid leave, if she opted to take the leave. Fearful of losing her job, Ms. Feliciano informed Ms. Vega that she did not wish to take unpaid leave and would instead continue working.

32. Approximately one week later, on January 11, 2005, Mr. Graubard called Plaintiff and informed Plaintiff that her annual review would be later that day. Later, Plaintiff met with Mr. Graubard and Ms. Vega under the impression that she would receive her first performance review.

33. Instead, Mr. Graubard informed Plaintiff that she was being terminated effective immediately. Graubard informed her that the company "had problems with her for some time" but refused to provide any explanation for Plaintiff's termination. Instead, Mr. Graubard informed Ms. Feliciano that she would receive an explanation only if she agreed to sign a waiver of her right to pursue a claim for disability discrimination and sought outsourcing counseling with an employment agency.

34. To date, Plaintiff has yet to receive a sufficient explanation for her termination. Plaintiff never received any negative feedback and had never received a performance review prior to her termination. She was in good standing with Studley at the time and had no reason to believe that her termination was imminent.

35. Worse, subsequent investigation has failed to yield any documentation of Plaintiff's alleged performance deficiencies, including an alleged performance warning and disciplinary probation, allegations which only surfaced after Ms. Feliciano filed a Charge of Discrimination with the EEOC. On May 8, 2007, Ms. Vega and Mr. Graubard were interviewed by the EEOC investigator assigned to investigate Plaintiff's EEOC

10

Charge during a fact finding conference.  During the course of the interview, Mr.

Graubard and Ms. Vega both conceded that Ms. Feliciano's "health issues" and request

for leave were discussed in connection with her termination, and that no documentation

could be produced to support their claims that Ms. Feliciano had been placed on

disciplinary probation while employed at Studley.

36.  The assigned EEOC investigator, clearly suspicious of Vega and Graubard,

called Ms. DiResto during the middle of the investigative interviews and asked her to pull

Ms. Feliciano's personnel file.  The employee complied and informed the investigator

that there was nothing in the file relating to probation or other disciplinary conduct.  Not

surprisingly, the EEOC issued a probable cause finding explicitly finding that Ms. Vega

and Mr. Graubard did not provide credible statements to the EEOC.

37.  The vague performance reasons offered for Ms. Feliciano's termination were

transparently pre-textual.  Simply put, Defendant's gambled that Ms. Feliciano, in her

vulnerable position, would cave and sign the waiver of her right to sue.

38. As a result of the termination, Plaintiff has begun counseling with a licensed

clinical social worker, who diagnosed her with depression and proscribed antidepressant

medication.  Additionally, Plaintiff's seizures, untreated as a result of Plaintiff's justified

fear of retaliation while employed at Studley, intensified for months after her termination

before she was able to control them following extensive treatment.

39.  Defendants discriminated against Ms. Feliciano by denying her a reasonable

accommodation, namely, medical leave for 2-3 months, because of her disability, because

Defendants regarded her as disabled, and/or because of his record of disability.

11

40. Defendants discriminated against Ms. Feliciano by failing to initiate a discussion with her concerning her need for an accommodation for her obvious and known disability when management perceived her to be having problems with her job performance.

41. Defendants discriminated against Ms. Feliciano by terminating her despite her qualifications for the evening receptionist position, because of her disability, because Defendants regarded her as disabled, and/or because of her record of disability.

42. Defendants, by and through their agents, retaliated against Plaintiff for requesting a reasonable accommodation, namely, 2-3 months of leave, because Defendant regarded her as disabled, and/or because of her record of disability.

43. As a result of Defendants' actions, Ms. Feliciano has suffered monetary and/or economic damages, including but not limited to the loss of past and future income, compensation and other benefits.

44. As a result of Defendants' actions, Ms. Feliciano has suffered severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering. Additionally, Plaintiff suffered from an unnecessarily prolonged period of active seizures which was the result of Defendant's failure to reasonably accommodate her.

45. Defendants' discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Ms. Feliciano's civil rights.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Discrimination in Violation of ADA)

46. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 45, inclusive, as if fully set forth herein.

47. Defendant Studley has discriminated against Plaintiff in violation of the ADA by denying her equal terms and conditions of employment, including but not limited to, denying her the opportunity to work in the evening receptionist position, for which she was hired and fully qualified, because of her disability, because Defendant Studley regarded her as disabled, and/or because of Plaintiff's record of disability.

48. Defendant Studley has discriminated against Plaintiff in violation of the ADA by denying her equal terms and conditions of employment, including but not limited to, terminating her or constructively discharging her, despite her qualifications for the evening receptionist position, because of her disability, because Defendant Studley regarded her as disabled, and/or because of Plaintiff's record of disability.

49. As a direct and proximate result of Defendant Studley's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits.

13

50. As a direct and proximate result of Defendant Studley's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional and pain and suffering.

51. Defendant Studley's unlawful and discriminatory actions constitute willful violations of the ADA for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Violation of the Duty of Reasonable Accommodation Under the ADA)

52. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 51, inclusive, as if fully set forth herein.

53. Defendant Studley violated its duty under the ADA to provide Plaintiff with a reasonable accommodation when it failed to allow Plaintiff a brief period of leave when she informed Defendant Studley of her medical need for leave based on her obvious and known disability.

54. As a direct and proximate result of Defendant Studley's violation of the duty of reasonable accommodation under the ADA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages.

55. Defendant Studley's unlawful conduct constitutes a knowing, malicious, willful and wanton violation of the ADA for which Plaintiff is entitled to an award of punitive damages.

14

## AS AND FOR A THIRD CAUSE OF ACTION

### (Violation of the Duty of Reasonable Accommodation Under the ADA: Failure to Engage in Interactive Process)

56. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 55, inclusive, as if fully set forth herein.

57. Defendant Studley violated its duty under the ADA to provide Plaintiff with a reasonable accommodation when it failed to initiate a discussion with Plaintiff regarding the need for an accommodation based on her obvious and known disability when she informed Defendant Studley of her medical need for leave.

58. As a direct and proximate result of Defendant Studley's violation of the duty of reasonable accommodation under the ADA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages.

59.   Defendant Studley's unlawful conduct constitutes a knowing, malicious, willful and wanton violation of the ADA for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Retaliation for Requesting a Reasonable Accommodation Under the ADA)

60. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 59, inclusive, as if fully set forth herein.

61. Defendant Studley violated its duty under the ADA when it fired Plaintiff in retaliation for requesting a reasonable accommodation consisting of a brief period of

leave when she informed Defendant of her medical need for leave based on her obvious and known disability.

62. As a direct and proximate result of Defendant Studley's retaliatory conduct under the ADA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages.

63. Defendant Studley's unlawful conduct constitutes a knowing, malicious, willful and wanton violation of the ADA for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Discrimination in Violation of New York State Human Rights Law)

64. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 63, inclusive, as if fully set forth herein.

65. Defendants have discriminated against Plaintiff in violation of the New York State Human Rights Law by denying her equal terms and conditions of employment, including but not limited to, denying her the opportunity to work in the evening receptionist position, for which she was hired and fully qualified, because of her disability, because Defendants regarded her as disabled, and/or because of Plaintiff's record of disability.

66. Defendants have discriminated against Plaintiff in violation of the New York State Human Rights Law by denying her equal terms and conditions of employment, including but not limited to, terminating her or constructively discharging her, despite her

16

qualifications for the evening receptionist position, because of her disability, because

Defendants regarded her as disabled, and/or because of Plaintiff's record of disability.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (Violation of the Duty of Reasonable Accommodation under the New York State Human Rights Law)

67. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 66, inclusive, as if fully set forth herein.

68. Defendants violated their duty under the New York State Human Rights Law to provide Plaintiff with a reasonable accommodation when they failed to allow Plaintiff a brief period of leave when she informed Defendants of her medical need for leave based on her obvious and known disability.

69. As a direct and proximate result of Defendants' violation of the duty of reasonable accommodation under the New York State Human Rights Law, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages.

70. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits.

71. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not

limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, weight gain, and emotional pain and suffering.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (Violation of the Duty of Reasonable Accommodation Under the New York State Human Rights Law: Failure to Engage in Interactive Process)

72.  Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 71, inclusive, as if fully set forth herein.

73. Defendants violated its duty under the New York State Human Rights Law to provide Plaintiff with a reasonable accommodation when they failed to initiate a discussion with Plaintiff regarding the need for an accommodation when she informed Defendants of her medical need for leave based on her obvious and known disability.

74. As a direct and proximate result of Defendants violation of the duty of reasonable accommodation under the New York State Human Rights Law, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### (Retaliation for Requesting a Reasonable Accommodation Under the New York State Human Rights Law)

75. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 74, inclusive, as if fully set forth herein.

76. Defendants violated their duty under the New York State Human Rights Law when they fired Plaintiff in retaliation for requesting a reasonable accommodation consisting of a brief period of unpaid leave when she informed Defendants of her medical need for leave based on her obvious and known disability.

18

77.  As a direct and proximate result of Defendants retaliatory conduct  under the New York State Human Rights Law, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages.

78.  Defendant's unlawful conduct constitutes a knowing, malicious, willful and wanton violation of the New York State Human Rights Law for which Plaintiff is entitled to an award of damages.

## AS AND FOR AN NINTH CAUSE OF ACTION

### (Aiding and Abetting Violations of New York State Human Rights Law)

79. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 78, inclusive, as if fully set forth herein.

80. Defendant Vega knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, harassment and retaliation against Plaintiff in violation of the New York State Human Rights Law.

81. As a direct and proximate result, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of damages.

82. As a direct and proximate result, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

## AS AND FOR AN TENTH CAUSE OF ACTION

### (Aiding and Abetting Violations of New York State Human Rights Law)

83. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 82, inclusive, as if fully set forth herein.

84. Defendant Robert Graubard knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, harassment and retaliation against Plaintiff in violation of the New York State Human Rights Law.

85. As a direct and proximate result, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of damages.

86. As a direct and proximate result, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

## AS AND FOR A ELEVENTH CAUSE OF ACTION

### (Discrimination in Violation of New York City Human Rights Law)

87. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 86, inclusive, as if fully set forth herein.

88. Defendants have discriminated against Plaintiff in violation of the New York City Human Rights Law by denying her equal terms and conditions of employment, including but not limited to, denying her the opportunity to work in the evening receptionist position, for which she was hired and fully qualified, because of her

20

disability, because Defendants regarded her as disabled, and/or because of Plaintiff's
record of disability.

89. Defendants have discriminated against Plaintiff in violation of the New York
City Human Rights Law by denying her equal terms and conditions of employment,
including but not limited to, terminating her or constructively discharging her, despite her
qualifications for the evening receptionist position, because of her disability, because
Defendants regarded her as disabled, and/or because of Plaintiff's record of disability.

### AS AND FOR A TWELVETH CAUSE OF ACTION

**(Violation of the Duty of Reasonable Accommodation under the New York City
Human Rights Law)**

90. Plaintiff hereby repeats and realleges each and every allegation in paragraphs
1 through 89, inclusive, as if fully set forth herein.

91. Defendants violated their duty under the New York City Human Rights Law
to provide Plaintiff with a reasonable accommodation when they failed to allow Plaintiff
a brief period of leave when she informed Defendants of her medical need for leave
based on her obvious and known disability.

92. As a direct and proximate result of Defendants' violation of the duty of
reasonable accommodation under the New York City Human Rights Law, Plaintiff has
suffered and continues to suffer harm for which she is entitled to an award of damages.

93. As a direct and proximate result of Defendants' unlawful and discriminatory
conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and

continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits.

94. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, weight gain, and emotional pain and suffering.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION

**(Violation of the Duty of Reasonable Accommodation Under the New York City Human Rights Law: Failure to Engage in Interactive Process)**

95. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 94, inclusive, as if fully set forth herein.

96. Defendants violated its duty under the New York City Human Rights Law to provide Plaintiff with a reasonable accommodation when they failed to initiate a discussion with Plaintiff regarding the need for an accommodation when she informed Defendants of her medical need for leave based on her obvious and known disability.

97. As a direct and proximate result of Defendants violation of the duty of reasonable accommodation under the New York City Human Rights Law, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION

**(Retaliation for Requesting a Reasonable Accommodation Under the New York City Human Rights Law)**

22

98. Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 97, inclusive, as if fully set forth herein.

99. Defendants violated their duty under the New York City Human Rights Law when they fired Plaintiff in retaliation for requesting a reasonable accommodation consisting of a brief period of unpaid leave when she informed Defendants of her medical need for leave based on her obvious and known disability.

100.    As a direct and proximate result of Defendants retaliatory conduct  under the New York City Human Rights Law, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages.

101.    Defendant's unlawful conduct constitutes a knowing, malicious, willful and wanton violation of the New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR AN FIFTEENTH CAUSE OF ACTION
### (Aiding and Abetting Violations of New York City Human Rights Law)

102.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 101, inclusive, as if fully set forth herein.

103.    Defendant Vega knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, harassment and retaliation against Plaintiff in violation of the New York City Human Rights Law.

104.    As a direct and proximate result, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and

23

future income, compensation and benefits for which she is entitled to an award of damages.

105.    As a direct and proximate result, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

## AS AND FOR AN SIXTEENTH CAUSE OF ACTION

### (Aiding and Abetting Violations of New York City Human Rights Law)

106.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 105, inclusive, as if fully set forth herein.

107.    Defendant Robert Graubard knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, harassment and retaliation against Plaintiff in violation of the New York City Human Rights Law.

108.    As a direct and proximate result, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of damages.

109.    As a direct and proximate result, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-

24

confidence, and emotional pain and suffering for which she is entitled to an award of damages.

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION

### (Negligent Hiring, Retention and Supervision)

110.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 109, inclusive, as if fully set forth herein.

111.    In hiring, training and supervising supervisory personnel, such as Lorraine Vega and Robert Graubard, Defendant Studley has a duty to prevent such personnel from engaging in discriminatory and/or tortious conduct.

112.    Defendant Studley negligently and/or recklessly breached its duty of care in hiring, training, retaining and supervising Lorraine Vega and Robert Graubard, who acted in a discriminatory and/or tortious manner toward Plaintiff.

113.    Defendant Studley knew or should have known that Ms. Vega and Mr. Graubard would act and/or acted in a discriminatory and/or tortious manner toward Plaintiff, and failed to exercise adequate care to prevent and/or remedy such conduct by its supervisory personnel.

114.    As a direct and proximate result of Defendant Studley's breach of its duty of care, Plaintiff has suffered and continues to suffer, monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits.

115.    As a direct and proximate result of Defendant Studley's breach of its duty of care, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering. Defendant Studley's failure to exercise its duty of care was reckless and in knowing disregard of its legal obligations to take steps to prevent such conduct under both federal and state law, for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A EIGHTEENTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

116.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 115, inclusive, as if fully set forth herein.

117.    As demonstrated in the preceding allegations, Plaintiff was terminated despite a record of competence for requesting a reasonable accommodation to address a severe medical condition. After her termination, Plaintiff was traumatized by the first genuine experience of discrimination she has suffered since age 8 when she was first diagnosed with her disability. As a result of the termination, Plaintiff suffered severe emotional distress compounded by her deteriorating physical health, which was also the effect of Defendant's unlawful failure to accommodate her known disability.

118.    Defendants conduct and treatment of Plaintiff was extreme and outrageous so as to exceed the bounds of decency in a civilized society.

119.    By their actions and conduct, Defendants intended to and did intentionally or recklessly cause Plaintiff severe emotional distress, which has required Plaintiff to undergo psychiatric therapy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in its favor and against Defendants, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of New York;

B.    An injunction and order permanently restraining Defendant Studley from engaging in such unlawful conduct;

C.    An order directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' discriminatory treatment of her and otherwise unlawful conduct, as well as to take such affirmative action, including but not limited reinstatement, as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment;

D.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

E.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory

damages, including but not limited to, compensation for his severe mental anguish, depression humiliation, embarrassment and emotional distress;

      F.     An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

      G.     An award of punitive damages;

      H.     An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

      I.     Such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: May 12, 2008          Respectfully submitted,

New York, New York        THOMPSON WIGDOR & GILLY LLP

By: _____
          Douglas H. Wigdor (DW-9737)
          Christopher Q. Davis (CD-7282)

          350 Fifth Avenue, Suite 5720
          New York, NY 10118
          Telephone: (212) 239-9292
          Facsimile: (212) 239-9001

          COUNSEL FOR PLAINTIFF